Good morning, your honor. My name is Bruce Brown, and with Randy Meyer, I represent the plaintiff appellant Tommia Dean. I will focus my remarks this morning on what are the elements of a section 1985-3 claim and whether the plaintiff helps them with plausibility. These two basic ideas merge in this case because the allegations were so clear that the plaintiff Tommia Dean, a black cheerleader at Kennesaw State University, and four other black cheerleaders knelt during the national anthem before a home football game to protest police brutality and discrimination against African Americans. The problem I'm having is I'm having a hard time understanding how the complaint alleges that either Warren or his alleged co-conspirator Earhart harbored any animus against African Americans. The animus is shown in what they were motivated to do, your honor, and they were motivated to stop the plaintiff. Thinking that a cheerleader who wears the school's uniform in front of a large crowd and is representing the university should not kneel when the university has called for everyone to stand for the national anthem and has had the, presumably, the school's message of patriotism that the school has organized and sponsored. I don't understand how opposition to that by itself alleges or creates an inference that the that the complainer about that conduct harbors racial animus. Your honor, my response to that would be that is an argument to the jury. That's not a factual judgment that the trial judge should make on a 12v6 motion and that we have two competing narratives. You know, if you want to allege racial animus against the defendant, you have to plead enough facts to create a plausible inference of it, and I don't see where we have that. There are no comments that are alleged to have been made by the sheriff, that would suggest that he had a racist motive here. Your honor, the allegations show that the cheerleaders were black, their message was to protest police brutality against African Americans, and section 1983-5 doesn't say anything about racial animus. Courts interpreting it have required racial animus, but in those cases, what the Supreme Court says usually matters to us. It does, and what the Supreme Court said in Griffin, and again in Scott, and as the D.C. Circuit summarized in Hobson, a core violation of section 1985-3 is suppressing political speech designed to advance the cause of African Americans. So this is a core violation that we were talking about, and the motive... Now though, counsel, you've skipped the question, or you've slipped the question. The question was, where in your complaint, if we decide that an allegation of racial animus is necessary, where is it? Well, we allege... I have with your position is, the only reference I can see, and it's your complaint, I don't mean you personally, but your client complaint, is in paragraph 29, and thanks to Warren, Earhart stated he, meaning Owens, had to be dragged there, but with you and I pushing, he had no choice. Thanks for your patriotism, my friend. So the only allegation that touches on motive, is it was motivated by patriotism, not racial animosity. Your honor, the conspiracy. Now the question is, why did they do it? There's two competing narratives. One narrative is that, as Judge Pryor suggested, that the motivation was because of an objection to the form of the protest, kneeling during the national anthem. Divorce from the content, which was a protest of racial injustice. The animus comes in the content of the speech that would be suppressed. So regardless of motive, you can't suppress any speech protesting racial injustice. That's your position. The question is, what does it mean in Griffin v. Breckenridge to have racial... My question is, what's your position? Is it your position that if these had been all white females, or males and females, they had been protesting the same thing, that that would be sufficient? Absolutely, and the cases hold, your honor. And suppose they had been protesting affirmative action. Your honor, that would... It's unfair to us. It takes one of our slots in college, or wherever, on the cheerleading team, or whatnot, based on the color of our skin, too wet white, and also have been equally protected with this. I believe so. That's not involved here. And therefore, racial animosity is not required? Or should we infer from the fact that they were white, and they were protesting on a white issue, quote unquote, white issue, that that's racial animosity? I'm trying to figure out whether you say it doesn't matter whether there's any racial animosity, or whether you say, does matter, but it was here. Nobody is going to admit to racial animosity. I'm not talking about admissions. I'm talking about allegations in a complaint. Your honor, the requisite animus, our position is that if the motivation is to suppress it seems to me that what the problem is that you would have us infer that if that's what the speaker's motive was, for whatever the message, if the speaker's message was that, that's what that's what's motivating them to kneel during the national anthem, that we automatically have to infer that that's what the defendant's motive was, that it had a counter motive that had to be necessarily against that message. But there's no facts to support that. And in fact, the only facts alleged in the complaint are to the effect that Justice Judge Carnes said that the defendant was Your honor, the point that you made, we're not demanding a verdict on these allegations. I understand that, but you have to allege enough to create a plausible inference. There's two plausible narratives. One narrative is, as the judge said, and that was this was just to protest that their motivation was to stop the physical act of kneeling, divorce from the content of the symbolic speech, which you're representing. That's what the trial found. Now, the appellee has not even testified. He hasn't even taken a position. He hasn't even said that he did this out of patriotism. This is the trial finding in the record something that does not exist, a narrative that is totally fabricated. I have real questions about whether this is even private speech. I mean, it looks to me like, I mean, if these are cheerleaders, they wear uniforms. I can't imagine that the school would allow them to cheer for the other team. Or to kneel during the school's alma mater or to hear the other team's fight song. Your honor, this has for 50 years, it has been well established that on the playground as in the classroom. That's true, but we're talking about a representative of the university. If you're just talking about someone who's compelled to attend a public school and their private speech, they don't shed their constitutional rights at the schoolhouse door. I get all that. Cheerleaders are different. Cheerleaders wear the school uniform. Everything that they do is coordinated by the school. What they say, the timing of their cheers, what they cheer, all of that's the school's message, isn't it? Your honor, that is a fact question. And the facts that we have are that the university did not agree with you, your honor. Now, what we have is really is some suggestion that the state attorney general's office doesn't understand the law. Maybe so, but then maybe it needs to go to summary judgment on that issue, but based upon what you said, that's not from the allegations. That's not from the allegations in the complaint. We do not get dismissed based upon facts like that. You get dismissed, counsel, based upon facts you didn't put in the complaint. That's the problem under Iqbal and Twombly. Now, before that, you'd be fat rich and happy on this complaint because there would be the burden of showing that that's not possible, that no set of facts can be conjured up, but the world changed with football, as it's referred to. Mr. Brown, you saved five minutes for rebuttal. Let's hear from Ms. Bruce, who will need to unmute herself. Thank you, your honor. Good morning, your honors. Lauren Bruce on behalf of Defendant Warren. As you have been discussing with Mr. Brown, a 1985-3 claim requires a narrow intent be shown, and this is a significant hurdle for plaintiffs to overcome. In these cases, often stand or fall on that exact animus component. What Mr. Brown has done in his complaint is provide a naked assertion without factual enhancement as to that piece. The paragraph 29 that Judge Carnes, you pointed to, where it refers to Sheriff Warren stating in a text that not letting the cheerleaders out on the field was one of the recommendations he gave. That doesn't speak at all to his motive, and there's no reference to race or police brutality in that allegation or any other allegation in the complaint as it relates to Sheriff Warren, except for the conclusory statement that he engaged in a conspiracy because of her race and because she protested police brutality. Mr. Brown has focused in his appellate brief, and he mentioned it here today, that the district judge found two plausible alternatives, and he chose one as being more plausible, but that's not what he did. He did exactly what he was supposed to do, which is to look at the conclusory allegations, cast them aside, see what was left, and say, does that cross the line from possible to plausible? In doing that, he also did exactly what he is allowed to do under 11th Circuit precedent, which is to consider obvious alternative explanations or more likely explanations. That is what he did when he looked at this patriotic component, which is woven into plaintiff's own allegations in various places. Judge Batten found that the only discernible motive was that Sheriff Warren opposed the practice of kneeling, not the reason for the kneeling. There's nothing that connects his disfavor for kneeling to plaintiff's basis for kneeling. Those two things may be completely true, that he opposed kneeling on the field and that she was kneeling to protest police brutality, but nothing connects those two together. Ms. Bruce, the complaint places the conduct in the context of anthem kneeling becoming a popular form of protesting police brutality against African Americans, and that during this football season, it was particularly something that was under discussion amongst the public and in the NFL. Does that create an inference or allow us to draw an inference that the conduct was based on the race-based conduct of the protest? I don't believe it does, Your Honor. I think that without the factual, and this is the way Judge Batten found it, without additional facts, the court is allowed to consider more likely explanations. This is where I say, and I think this is what Judge Batten found as well, that even plaintiff's own allegations lean more towards that patriotic motive when she's discussing Colin Kaepernick and him kneeling. She says it's a divisive issue, and then I believe she cited to, maybe it was Kareem Abdul-Jabbar, referencing this practice of kneeling and said, in his quote, said something to the effect of, this is in itself patriotic. There are other to be patriotic other than crying at the 4th of July fireworks. So the allegations that plaintiff put in there and elsewhere where she says, every time she says that Sheriff Warren or anyone else at KSU had an issue with the kneeling, she says Sheriff Warren called Olin's to say the cheerleader should not be allowed to kneel on the field. I think it's telling that she didn't say he called to say she should not be able to protest police brutality, because again, it was the practice, the act of it. So just in the same way that in Bray and I believe Lucero in our circuit said that the practice, that having animus against the practice of abortion is not the same as having animus towards women. So the practice of having animus against the practice of kneeling, it's too far of a jump to say that that automatically means that it was because Miss Dean was protesting police brutality against African Americans. There is not an allegation that Sheriff Warren, for that matter, even knew that that's what she was protesting. Of course, we can perhaps infer with everything that was going on at the time that he did, but it's still not enough to push it from speculative, conceivable facts that are consistent with a possible discriminatory animus. It just doesn't cross that line. Even if he's aware of all of that, it doesn't mean that he harbored racial animus. Yes, yes, correct. We focused on the patriotic aspect of it, but I think there are other alternatives as well that could have been that some people just don't believe that the sidelines of a college sports athletic event is the place for political protest by people wearing the uniform of the school. That, again, is not race-based. It's a separate reason. It might be the sheriff too thinks that law enforcement are being unfairly maligned. Yes. If he is a law enforcement officer. Yes, absolutely. That doesn't mean that he harbors racial animus. Yes, that is absolutely correct. And this segues into the same point, but I think what Mr. Brown is asking, two things. Judge Carnes, you said you were trying to figure out if he was saying that intent doesn't matter or if it's been shown here, and I struggled with the same question, and I think that to the extent he says it doesn't matter, that's just wrong law. Bray has said that it has to be, that the animus has to be at least partially because of not in spite of the protected class. So in both this circuit and Supreme Court precedent, I don't know how you can possibly say that it doesn't matter. It matters. But so then I think the only way he can get to the intent component is to say that we need to presume that intent because she was Black and because she protested race-based issues. But in Bray, the Supreme Court said that that presumption arises only when the animus is aimed at something that is such an irrational object of disfavor and it's exclusively or a tax against wearing yarmulkes would be a tax against the Jews. And in Bray, the court said that opposition to abortion is not an irrational object of disfavor that gives rise to this presumption. And so I would submit that standing for the national anthem, which has been a tradition in our country for centuries, opposing kneeling during that anthem, it's impossible to say that that's an irrational sentiment, even if it's just based on that it's patriotic to stand for the national anthem. We do that for the military, whatnot. So and then separate from that, unlike the Jews example that Justice Scalia gives in Bray, here we don't have a single class. It wasn't, it was that the cheerleaders kneeling all happened to be African-American, but there are no allegations to say that only African-Americans protest police brutality against other African-Americans. So it's not exclusively or predominantly affecting one class. And so under that Bray logic of an irrational object of disfavor, it doesn't meet either of those prongs. So without the necessary factual enhancement on the race-based animus component, we would say that it's possible, but has not crossed the line to plausible. Your honors, I'd like to quickly turn to another basis for dismissal of the, affirming the dismissal of this case that Judge Batten raised in a footnote of his decision. And I don't want to get into the, and this is the footnote to decision where Judge Batten said that it was an independent ground for granting dismissal based on the Fifth Circuit's binding decision in McClellan versus Mississippi Power and Light Company. And I don't want to, it would take too long to get into all the weeds of the, that actual component, but I just wanted to point out, which we did in our brief, that the plaintiff didn't challenge that independent ground. And I think particularly with Judge Batten having used that magic term of this is an independent ground, I'm granting it entirely, I could grant it entirely separately on this ground. And then it was not raised in appellant's brief. We would argue that they've waived, they've abandoned that ground, and that would be its own basis for affirming dismissal. Now, of course, they say in their reply brief that they did touch on that particular footnote argument by saying that they'd argued a violation of the First Amendment. Again, not getting into the details of it. We could have briefed the issue if it had been raised, but it wasn't. And just by raising this First Amendment issue, they haven't adequately raised it because they haven't precisely and predominantly raised it, and therefore it is abandoned. Now, touching very briefly in my last few minutes on the First Amendment component of this case, Judge Pryor, as you alluded to, obviously we think that this is government speech for the various reasons that we put in our brief and the obvious. She was wearing a KSU uniform, KSU-sponsored event on KSU property. She got to the field by virtue of being a KSU cheerleader. But- I present, I understand that cheerleaders are told when they can come on the field and when they have to leave. I think that would be- And cheer for the other team. I think that would be a common sense assumption, even if it is not pled exactly in the complaint. I think that's common sense. We would all think that. We don't really have to get to all that, though. I mean, that's the problem with that, it seems to me, is that gets into- there's not much in the complaint about it. And frankly, it gets to a on statutory interpretation and the pleading standard. And that seems to me to be the narrower way to decide the case. Do you agree? Yes, I would agree with you, Your Honor. I think that we could get there, but I do think that- and as I alluded to at the beginning, these cases generally stand or fall on the animus component. And I think this one falls on the animus component. But the one last thing I will mention is that for the First Amendment claim, in their reply brief, the plaintiff briefly discusses the government speech component, but then they incorporate by reference their First Amendment arguments before the district court as to the rest. So as to the private speech arguments, they've just incorporated by reference their briefs below. And this court said in Four Seasons Hotels and Resorts, 377 Federal 3rd, 1164, at footnote four, that by using that process, you've waived the argument because the panel doesn't need to go back and read through and you have to raise it in your briefing before the court, and it also circumvents your page limitations. So that footnote has a bit of a scathing review of trying to incorporate these arguments in that fashion. And so we would say that they've essentially conceded on the First Amendment piece by not arguing against our private speech argument in their appellate brief. In conclusion, Your Honors, I will just quote Justice Scalia and say that this is not the stuff out of which in 1985, three invidious discriminatory animus is created. And for that reason, we would ask you to affirm the dismissal of Sheriff Warren. Thank you, Mr. Bruce. We'll hear five minutes of rebuttal from Mr. Brown. Thank you, Your Honor. The counsel, can I ask you something? I've been wondering about, according to Google, there are more than 40 million African Americans in the United States. And if you don't dispute that some of that number might hold the view that people shouldn't be during the national anthem, however valid the point they're protesting, that that's unpatriotic, and that there are better ways to do it. And therefore, it shouldn't be permitted. That's not your position? No, Your Honor. Okay. Well, if every defendant in this case, pure hypothetical, if every defendant in this case was African American, would your complaint still be sufficient? Yes, Your Honor. Because we could infer racial animosity from African American defendants against African Americans? Yes, Your Honor. Okay. Thank you. The facts, though, are that the plaintiffs are Black and the defendants are white. Not in my hypothetical. I understand if you're saying this is different, but I'm trying to determine whether your argument that the complaint is sufficient is dependent upon the race of the defendants, the race of the defendants. Your Honor, the race of the defendants actually is not something that has been pointed out in the case law, and it wasn't pointed out in this case as being a mitigating or aggravating factor in considering the inferences that fairly may be drawn from the facts. But to get back to the motivation, I think, Judge Pryor, the real question is, what do you have to be motivated to do? And so not so much your very clear in the footnote 10 to Griffin, is what are you motivated to do? The racial animus element is not in the statute, so we're a little bit at sea. But let's look at what they decided. In Griffin itself, the case that engrafted this... The court said this, the motivation aspect of but on invidiously discriminatory animus. What you have to show is you have to allege facts that would create a plausible inference that the sheriff's motivation was racist. It was racially motivated that involved race. That it was invidiously discriminatory animus. Yes, Your Honor, and if you look at Griffin, the facts in Griffin were that there was no finding that the defendants in Griffin were racist. The finding was that they blocked the civil rights worker with use of force from traveling to protest and that that was sufficient. Not only sufficient, the Supreme Court was so close to the core of the coverage intended by Congress that it is hard to conceive of wholly private conduct that would come with this does not. What the statute was, this is a different sort of civil rights statute. This is a civil rights statute that is designed to stop people from helping the government suppress speech about racial injustice. This case is right in the that Judge Scalia agreed with Judge Edwards in their case Hobson. In the Hobson case, the FBI conspiracy alleged in this case, and I'm quoting, alleged that the FBI conspiracy allegedly targeted plaintiffs in significant part because of their involvement in and support of civil rights. At a minimum, according to Griffin, section 1985-3 reaches conspiracies motivated by animus against Blacks and those who support them. Therefore, what Scalia, Edwards, and Starr are saying in that opinion is that if you are opposing, in violation of the First Amendment, the advocation of racial politics, that's sufficient animus. That's what they're saying. It's the same as in Griffin. 1981 is the statute that is designed to get at intentional racial discrimination. That's not 1985. 1985 is more of a political and racial statute as it is a discrimination statute. Okay, Mr. Brown. I think we understand your argument, and we'll move to the next case. Thank you very much. Thank you.